UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| *In re*: <br><br> ROBERT MATTHEWS, <br><br>                     *Debtor*. | Chapter 11 <br><br> Case No.: 17-23426-MAM |

**CREDITOR'S OBJECTIONS TO DEBTOR'S DISCLOSURE STATEMENT**

Seth Bernstein ("Bernstein"), as a creditor of Robert Matthews ("Debtor"), submits the following objections to the Debtor's second amended disclosure statement (ECF#135, "Disclosure Statement").

**BACKGROUND**

Bernstein objects to the Disclosure Statement on the grounds that it (a) contains certain factual omissions and (b) does not provide adequate information regarding how Bernstein's claims – or Debtor's assets related to Bernstein's claims – shall be treated under the Debtor's proposed second amended plan (ECF#134, "Plan"). These deficiencies, in turn, make it impossible for Bernstein to adequately evaluate the Plan and determine whether to vote in favor of or against the Plan, and whether to object to confirmation.[1] This Court should direct Debtor to file a more fulsome, amended disclosure statement so that all creditors, including Bernstein, can then properly evaluate the merits of the Proposed Plan.

---

[1] On June 4, 2018, the United States Trustee filed extensive objections to the Disclosure Statement. (ECF#149) Bernstein joins in these objections to the extent they relate to providing additional information regarding the names of the creditors, the amounts of the claims, and whether the Debtor intends to object to proofs of claim.

1

Bernstein's Claims & Interests

Bernstein has filed two claims in this case (Claims 83 and 84) and has interests that may be affected by at least one other claim (Claim 16). Specifically, Bernstein is counterparty to the Debtor on a Credit Enhancement Agreement and a Promissory Note, both dated August 18, 2017. Both agreements relate to Debtor's homestead property at 101 Casa Bendita, Palm Beach, Florida ("Homestead"), which Debtor intends to liquidate in order to satisfy his various creditors' claims according to the Disclosure Statement and Plan.

*Bernstein's Claim 83*

Under the Credit Enhancement Agreement,[2] Bernstein agreed to deposit $1,270,707.35 with Platte River Insurance Company and Capitol Indemnity Corporation to serve as collateral for a bond issued by Capitol Indemnity Corporation on behalf of the Debtor to stay a sale in the foreclosure proceeding against the Homestead.

Debtor described this transaction in the Disclosure Statement, albeit without ever mentioning Bernstein, the Credit Enhancement Agreement, or Claim 83: "As a result of the Stay Order, on or around August 18, 2017, Debtor and his spouse i) posted or caused to be posted on their behalf an Appeal Bond in favor of DBPW in the amount of $1,270,707.35 issued by Capital Indemnity Corporation . . . . The $1,270,707.35 Appeal Bond was intended to account for one year of interest on the DBPW's Final Judgment of Foreclosure."  (ECF#135 at 12).

The Credit Enhancement Agreement gave Bernstein certain rights in exchange for putting up the collateral for the Appeal Bond. Among other things, the Credit Enhancement Agreement stated that "[i]n exchange [for Bernstein's payment, Debtor] agrees to provide [Bernstein] with a portion [25%] of the Net Realized Value for the sale of the Property and to turn over the listing

---

[2] A copy of the Credit Enhancement Agreement is attached to Claim 83.  (Claim 83-1 Part 2).

2

and sale of the Property, and all decisions to be made thereto, to [Bernstein] . . . ." (Claim 83-1 Part 2).

*Bernstein's Claim 84*

The Credit Enhancement Agreement also notes that Debtor was ordered in the foreclosure proceeding on the Homestead to pay $82,251.00 for hazard insurance on the property. The Agreement states that "[b]y separate Agreement, [Bernstein] agrees to loan the funds for payment of the hazard insurance as set forth in the Loan Documents." (Claim 83-1 Part 2.) That "separate Agreement" took the form of a Promissory Note whereby Bernstein loaned Debtor $102,251.00, with a contemplated repayment date of May 18, 2018 and interest accruing on unpaid principal at 18% per annum.[3]

As with Claim 83, however, nothing in the Disclosure Statement or the Plan directly references the Promissory Note or Bernstein. At most, Debtor states in the Disclosure Statement that "[a]s a result of the Stay Order, on or around August 18, 2017, Debtor and his spouse . . . ii) paid or caused to be paid on their behalf $82,251.00 to DBPW for hazard insurance." (ECF#135 at 12).

*JPMorgan's Claim 16*

JPMorgan Chase Bank, National Association ("JPMorgan") has filed a secured claim (Claim 16) relating to property Debtor had owned at 11 Cliff Road, Nantucket, MA 02554 ("Cliff Road Property") for approximately $7.5 million. Debtor has an outstanding loan from JPMorgan from which the bank has never released him. As the Debtor describes in the Disclosure Statement and Plan:

---

[3] A copy of the Promissory Note is attached to Claim 84. (Claim 84-1 Part 2.)

"JPMorgan Chase Bank, National Association ('JPMorgan') filed a secured claim in the amount of $7,519,877.84 (POC 16-1). Such claim is purportedly secured by a mortgage on the real property at 11 Cliff Road, Nantucket, MA 02554, which Debtor no longer owns (the 'Cliff Road Property'). The Debtor lost the Cliff Road Property through the foreclosure of another creditor in 2017 . . . ." (ECF#135 at 20).

Left unsaid, albeit disclosed elsewhere in Debtor's various filings, is that the other creditor referenced in the above description was SAB LLC. (ECF#26 at 4, Statement of Financial Affairs). SAB LLC is one of Bernstein's companies. SAB LLC had purchased an existing second mortgage on the Cliff Road Property and, eventually, entered into a "friendly foreclosure" proceeding against Debtor, thereby acquiring the property.

## OBJECTIONS

Section 1125(b) of the United States Bankruptcy Code requires that, before soliciting acceptance or rejection of a plan, the debtor must provide the court and his creditors with a "written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Disclosure is the "pivotal" concept in a chapter 11 reorganization. *Westland Oil Development Corp. v. MCorp Management*, 157 B.R. 100, 102 (Bankr. S.D. Tex. 1993); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'").

The term "adequate information" is defined as "information of a kind, *and in sufficient detail*, . . . that would enable such a hypothetical investor of the relevant class to make an informed

judgment about the plan . . . ." *Id.* § 1125(a) (emphasis added) (further defining "investor of the relevant class" as including investors having "a claim or interest of the relevant class"). Further, in considering whether a disclosure statement contains adequate information, courts are directed to consider "the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information."

Bernstein objects to the adequacy of the Disclosure Statement on two grounds:

*First*, the Disclosure Statement does not contain adequate information about Bernstein's agreements with Debtor regarding the Homestead. While Debtor spends more than five pages cataloguing matters relating to the Homestead (ECF#135 at 10-16), the Disclosure Statement is silent about Bernstein's claims and rights under the Credit Enhancement Agreement and Promissory Note and how they will be treated under the Plan. The Disclosure Statement does not refer to Claims 83 and 84 anywhere and does not contain the name "Bernstein" at all. It is unclear, therefore, how Bernstein's claims would be treated under the Proposed Plan, which is particularly concerning given that the Credit Enhancement Agreement in Claim 83 entitles Bernstein to a portion of the monies realized through the sale of the Homestead. Consequently, Bernstein cannot adequately evaluate the Plan.

*Second*, Debtor's explanation of how he intends to treat Claim 16 is wholly lacking in substance or explanation. After noting that JPMorgan has a $7.5 million claim against Debtor, the Disclosure Statement and Plan both state that Debtor "lost the Cliff Road Property through the foreclosure of another creditor in 2017, and JPMorgan's [sic] shall be paid solely from its lien rights on the Cliff Road Property." (ECF#135 at 20). In other words, Debtor apparently intends to leave SAB LLC holding the bag for Debtor's $7.5 million obligation to JPMorgan. Nowhere in the Disclosure Statement (or elsewhere in the Debtor's submission) is there an explanation of

5

how this would be accomplished or how it is legally permissible.  While SAB LLC did foreclose on the property, the initial loan from JPMorgan to Debtor was not extinguished, released, or satisfied.  Regardless of whether JPMorgan can or cannot look to the Cliff Road Property for satisfaction, it can also still look to Debtor.  Simply stating that JPMorgan should *only* look to the property does not provide Bernstein with adequate information to evaluate the Proposed Plan.

## CONCLUSION

For the reasons discussed above, Bernstein objects to the Disclosure Statement as lacking adequate information, within the meaning of 11 U.S.C. § 1125(a).  This Court should not approve the Disclosure Statement and should instead direct Debtor to file further disclosure so that creditors, including Bernstein and SAB LLC, can effectively evaluate the Proposed Plan.

Dated: June 12, 2018.

                                                  KOZYAK TROPIN & THROCKMORTON, LLP
                                                  Counsel for Seth Bernstein
                                                  2525 Ponce de Leon Boulevard, 9th Floor
                                                  Coral Gables, Florida 33134
                                                  Tel:    (305) 372-1800
                                                  Fax:   (305) 372-3508

                                                  By:    */s/ David L. Rosendorf*
                                                            David L. Rosendorf
                                                           FL Bar No. 996823

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case on this 12th day of June, 2018.

                                                  By:    */s/ David L. Rosendorf*
                                                            David L. Rosendorf