

ORDERED in the Southern District of Florida on December 21, 2018.

_____
**Mindy A. Mora, Judge
United States Bankruptcy Court**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | Case No: 17-23426-MAM |
| | Chapter 11 |
| ROBERT MATTHEWS, | |
|                   Debtor                / | |

## ORDER CONFIRMING PLAN OF REORGANIZATION

**THIS MATTER** came before the Court in West Palm Beach, Florida, for hearing on December 10, 2018, at 2:30 pm (the "Confirmation Hearing") to consider: (a) confirmation of the First Amended Chapter 11 Plan of Reorganization of Robert Matthews [D.E. 200], as supplemented by the First Supplement to First Amended Chapter 11 Plan of Reorganization of Robert Matthews [D.E. 201] (the "Plan") (the "Plan"), (b) Investor Warranty of America Inc.'s Amended Objection to Confirmation of Debtor's First Amended Plan of Reorganization ("Investors Warranty")(the "IW Objection") [D.E. 319], (c) 160 Royal Palm, LLC's Objection To Confirmation Of First Amended Chapter 11 Plan Of Reorganization Of Robert Matthews [D.E. 356], (d) the Debtor's Limited Response And Motion to Strike 160 Royal Palm LLC's Objection to Confirmation [D.E. 364], (e) 160 Royal Palm, LLC's Opposition Response to the Debtor's Limited Response And Motion to Strike [D.E. 372] and (f) DB Private Wealth

1

Mortgage, Ltd.'s Joinder to Debtor's Limited Response And Motion to Strike 160 Royal Palm LLC's Objection to Confirmation [D.E. 374].

At the Confirmation Hearing, the Court also considered: (a) the Debtor's First Amended Disclosure Statement, including the Table of Claims and their respective treatments as outlined in Exhibit B included with such Disclosure Statement [D.E. 188], (b) the Debtor's Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount to be Deposited, and Payment of Fees [D.E. 367], (c) the Debtor's Confirmation Affidavit of Robert Matthews [D.E. 362] and (d) the Notice of Filing Deposition Transcripts of Maria and Robert Matthews, as filed by 160 Royal Palm, LLC [D.E. 375].

Other matters that were scheduled to be heard and considered by the Court at the December 10, 2018 confirmation hearing included: (a) the Motion to Allow Late Filed Claim(s) filed by Creditor Palm House Investors [D.E. 199]("Motion to Allow Other Palm House Investors"), (b) the Stipulation between the Other Palm House Investors (Claims 89 through 101) (the "Other Palm House Investors") and the Debtor resolving the Motion to Allow Other Palm House Investors (the "Other Palm House Investors Stipulation")[D.E. 365], (c) the Debtor's Objection to the Claim of the NY State Department of Taxation [D.E. 207], (d) the Motion for Relief From Stay filed by Creditor BMW Financial Services NA, LLC [D.E. 327], (e) the Objection to Debtor's Claim of Exemptions filed by 160 Royal Palm, LLC [D.E. 195](the "160 Objection to Exemptions"), (f) the Motion to Allow Late Filed Claim(s) filed by 160 Royal Palm, LLC [D.E. 209](the "160 Motion to Allow"), (g) the Debtor's Responses to the 160 Objection to Exemptions and the 160 Motion to Allow [D.E. 222 and 223], (h) Iberia Bank's Joinder to Debtor's Response to the 160 Motion to Allow [D.E. 233,] (i) the EB5 Claimants' Joinder to Debtor's Responses to the 160 Objection to Exemptions and the 160 Motion to Allow [D.E. 225 and 226], (j) the Other Palm House Investors' Joinder to Debtor's Response to the 160 Objection to Exemptions and the 160 Motion to Allow [D.E. 370], (k) DB Private Wealth Mortgage, Ltd.'s Joinder to Debtor's Responses to the 160 Objection to Exemptions and the 160 Motion to Allow [D.E. 373], (l) the Application for Compensation

2

filed by Accountant Kevin Munroe [D.E. 322] and (m) the Application for Compensation filed by Debtor's bankruptcy counsel, Christian Panagakos of Florida Bankruptcy Advisors, P.L. [D.E. 325] (together, the "Matters Ancillary to Confirmation").

In connection with the Matters Ancillary to Confirmation: (a) the Motion to Allow Other Palm House Investors [D.E. 199] was granted, allowing the Other Palm House Investors to participate with the other general unsecured claimants in the Class 5, as resolved in the Other Palm House Investors' Stipulation, [1] (b) the Debtor's Objection to the Claim of the NY State Department of Taxation [D.E. 207] was continued to February 12, 2019 at 1:30 p.m. [D.E. 377], (c) the Motion for Relief From Stay filed by Creditor BMW Financial Services NA, LLC [D.E. 327] was granted [D.E. 380], (d) the 160 Objection to Exemptions [D.E. 195] was overruled in its entirety [D.E. 381], (e) the 160 Motion to Allow [D.E. 209] was denied in its entirety [D.E. 382], (f) the Application for Compensation filed by Accountant Kevin Munroe [D.E. 322] was granted [1] and (g) the Application for Compensation filed by Debtor's bankruptcy counsel, Christian Panagakos of Florida Bankruptcy Advisors, P.L. [D.E. 325] was continued to December 18, 2018 at 01:30 PM [D.E. 376], an Amended Application was filed on December 13, 2018 [D.E. 384] and such Amended Application was approved by the Court on December 18, 2018.[1]  In addition, the Debtor's Motion to Strike [D.E. 372] 160's Objection to Confirmation [D.E. 356] was not specifically heard by the Court and was denied as moot, without prejudice [D.E. 388].

Leading up to the Confirmation Hearing, on September 21, 2018, the Court entered the Order (I) Approving Disclosure Statement; (II) Setting Hearing On Confirmation Of Plan; (III) Setting Hearing On Fee Applications; (IV) Setting Various Deadlines; And (V) Describing Plan Proponent's Obligations, which scheduled the Confirmation Hearing for November 20, 2018, and, among other deadlines, set November 6, 2018 as the deadline by which creditors needed to file their ballots and the deadline for objections to confirmation (the "Initial Disclosure Approval Order") [D.E. 193].  On October 30, 2018, the Initial Disclosure Approval Order was amended solely to move the Confirmation Hearing Date and

---

[1] At the time of submission of this Confirmation Order, the order related to this motion had not been docketed.

related deadlines, specifically scheduling the Confirmation Hearing for December 11, 2018, and, among other deadlines, setting November 27, 2018, as the deadline by which creditors needed to file their ballots and the deadline for objections to confirmation [D.E. 244](the "Amended Disclosure Approval Order)[2]. Ultimately, on December 4, 2018, the Court, *sua sponte*, entered the Order Rescheduling Confirmation Hearing And Related Matters For December 10, 2018, At 2:30 P.M. (the "Rescheduling Order"), but specifically clarified that the deadlines contained in the Amended Disclosure Order were not altered by such Rescheduling Order. [D.E. 358].

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plan having been properly served upon all creditors and parties in interest pursuant to the Bankruptcy Rules and the Court's Initial Disclosure Approval Order [D.E. 193] and the Amended Disclosure Approval Order [D.E. 244], as applicable; and the Court having rendered findings of fact, in accordance with Fed. R. Civ. P. 52, made applicable herein pursuant to Fed. R. Bankr. P. 7052, and having determined that:

A. The Plan has been accepted in writing by the claimants of Debtor whose acceptance is required by law; and

B. The provisions of Chapter 11 of the Code have been complied with; and

C. The Plan has been proposed in good faith and not by any means forbidden by law. *See McCormick v. Banc One Leasing Corp.*, 49 F.3d 1524, 1526 (11th Cir.1995); *In re Piper Aircraft Corp*., 244 F. 3d 1289 (11th Cir. 2001); and

D. The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims that is impaired under the Plan, including both those that accepted the Plan and those that rejected the Plan, if any; and

---

[2] The Confirmation Hearing date was moved to December 11, 2018 pursuant to 160 Royal Palm LLC's Expedited Motion to Continue Confirmation Hearing filed on October 22, 2018 [D.E. 227] and Debtor's voluntary agreement to such motion in reliance on good-faith efforts to resolve any meritorious concerns 160 may have had.

E. All payments made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan or by any other person for services or for costs and expenses in, or in connection with, the Plan and incident to the case, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to approval of the Court; and

F. The identities, qualifications, and affiliations of persons who are to be directors or officers, or voting trustees, if any, of the Debtor after confirmation of the Plan as modified, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable and consistent with the interest of the claimants and interest holders and with public policy; and the identity of any insider that will be employed or retained by the Debtor and compensation to such insider has been fully disclosed; and

G. Each holder of a claim or interest in each impaired class has accepted the Plan; and each holder of a claim of a class to which 11 U.S.C. 1111(b)(2) applies will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

H. Each class of claims that is impaired under the Plan has accepted the Plan, as determined without including any acceptance of the Plan by any insider.

I. The confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor except to the extent and as provided in the Plan; and

J. All fees payable under section 1930 of title 28, have been paid or the Plan provides for the payment of all such fees on the effective date of the Plan; and

K. The Debtor has no retirement plan, and the Debtor therefore has no obligation to provide such benefits; and

L. The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation; and

M. The value of the property to be distributed under the Plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning

5

on the date that the first payment is due under the Plan, or during the period for which the plan provides payments, whichever is longer.

N.  Articles IV and V of the Plan, as modified herein, properly designate and classify the classes of claims.  Valid business, factual, and legal reasons exist for the separate classification of the various classes of claims, including without limitation Debtor's separate, limited consent to the treatment of the Investor's Warranty claim, exclusively, to avoid the costs and uncertainties of litigation with Investors Warranty; accordingly, the claims placed in each class are substantially similar to other claims in each such class, and such classes do not unfairly discriminate between holders of claims.

O.  Articles IV and V of the Plan, as modified herein, also specify the treatment of any claims that are impaired under the Plan and provide for the same treatment for each claim in each respective class unless the holder of a particular claim has agreed to a less favorable treatment of such claim.

**THEREFORE, BASED UPON THE FOREGOING, IT IS ORDERED AND ADJUDGED AS FOLLOWS**:

1. The Plan is **CONFIRMED** and **APPROVED** in all respects as modified herein pursuant to 11 U.S.C § 1129.

2. All of the terms and provisions of a) the Debtor's First Amended Disclosure Statement [D.E. 188], including the Table of Claims and their respective treatments as outlined in Exhibit B included with such Disclosure Statement and b) the Plan are approved and incorporated herein, subject to any subsequent modifications made, including through this Confirmation Order.  In the event of any inconsistency between the Plan and the Disclosure Statement, any Exhibit to the Plan or the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern (collectively, the "Confirmed Plan").

3. The Confirmed Plan complies with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules including, without limitation, 11 U.S.C. §§ 1122, 1123 and 1129.

4. The IW Objection is sustained by agreement and as treated herein. Any other objections to confirmation of the Plan, to the extent not resolved or withdrawn, are hereby overruled in their entirety.

5. The Debtor acknowledges that he has had a full and fair opportunity to reorganize pursuant to the provisions of the Bankruptcy Code.

6. The provisions of the Confirmed Plan are binding on the Debtor, each creditor, and every other interested party.

7. Any modifications to the Plan included herein present treatment which has already been proposed to and not objected to by any creditor, do not adversely affect the treatment of creditors from that treatment which has been duly noticed and solicited, and any adversely affected creditor has affirmatively agreed to such amended treatment, and, accordingly, further solicitation and notice is not required.

8. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

9. Both the Debtor and the Liquidating Agent shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other actions as may be necessary to effectuate and further evidence the terms and conditions of the Confirmed Plan.

10. As to the *priority* tax claim of the New York State Department of Taxation & Finance (POC No. 7)(the "NY Taxation Claim"), such NY Taxation Claim shall be treated as determined by stipulation between the parties or as ordered by the Court in connection with the Debtor's Objection to the Claim of the NY State Department of Taxation [D.E. 207], which remains pending and is scheduled to be heard on February 12, 2019 at 1:30 p.m. [D.E. 377].

11. As to the *priority* tax claim of the Internal Revenue Service (POC No. 13)(the "IRS Priority Tax Claim"), the Allowed Priority Amount of such claim shall be paid from the Net Sale Proceeds derived from the Sale of Debtor's Homestead, pro-rata with other Allowed Priority Tax Claims, up to the full Allowed Amount of the IRS Priority Tax Claim to the extent that funds are available after the payment

of relevant Allowed Secured Claims, all Allowed Administrative Claims and all Customary Closing Costs, in accordance with the Plan and this Confirmation Order. To the extent the foregoing payment is insufficient to fully satisfy the outstanding Allowed Amount of the IRS Priority Tax Claim, then the remaining Allowed Amount of the IRS Priority Claim shall be paid from the sale of the MVH Real Property, pro-rata with other Allowed Priority Tax Claims, up to the remaining Allowed Amount of the IRS Priority Tax Claim, to the extent that funds are available after the payment of relevant Allowed Secured Claims on the MVH Real Property, the payment of all remaining Allowed Administrative Claims and the payment of all Customary Closing Costs. To the extent the foregoing payments are insufficient to fully satisfy the outstanding balance of the IRS Priority Tax Claim, then payments shall commence such that the remaining balance of the allowed IRS Priority Tax Claim is paid in full over a period ending not later than (5) years from the *date of the order of relief* and in accordance with the Plan, with specific terms to be agreed upon in writing between the Reorganized Debtor and the holder of the IRS Priority Tax Claim or ordered by the Bankruptcy Court in the event such parties cannot timely agree on such terms. Moreover, as the IRS Priority Tax Claim was based on estimated amounts for tax years 2014, 2015 and 2016, the Debtor reserves all rights to object to the IRS Priority Tax Claim based on the actual amounts owed in connection with the Debtor's 2014, 2015 and 2016 tax returns.

12. As to the Allowed Administrative Claims, including all post-confirmation fees of the Liquidating Agent and other retained professionals, the holders of such claims shall be paid in full from a) the sale of the Debtor's Homestead in accordance with the Plan or as otherwise agreed, including without limitation from any buyer's premium related to such sale, b) the sale of the MVH Real Property and c) the Reorganized Debtor, to the extent that there remains an unpaid balance on such claims after the sale of Debtor's Homestead and the MVH Real Property.

13. As to the Class 1 secured claim of DB Private Wealth Mortgage Ltd ("DB Private"), secured by the real property located at 101 Casa Bendita, Palm Beach, FL 33480, the holders of such claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, payment in an amount that will provide up to the entire amount of their Allowed Secured Claim, with such payment

to be provided from the Sale of Debtor's Homestead. To the extent that the payment received from the Sale of Debtor's Homestead is less than the total amount of the Allowed Secured Claim, the holder of such undersecured claim shall have an unsecured claim for such deficient amount, and may participate in any Class 5 distribution(s) related to such deficiency claim only if the holder of such claim timely amends its claim to reflect such deficiency.

14. As to the Class 2 secured claim of the Internal Revenue Service ("IRS"), secured in part by the real property located at 101 Casa Bendita, Palm Beach, FL 33480, the holders of such claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, payment in an amount equal to the value of the IRS's Allowed Secured Claim, as determined by the Net Sale Proceeds from the Sale of Debtor's Homestead that remain available to treat the IRS' Allowed Secured Claim, up to the full amount of the IRS' Allowed Secured Claim. To the extent that the Net Sale Proceeds that remain from the Sale of Debtor's Homestead are less than the total amount of the IRS Allowed Secured Claim, the holder of such undersecured claim shall have an unsecured claim for such deficient amount, and shall be included in Class 5 for such deficiency balance. Such additional treatment shall provide the IRS with the indubitable equivalent to the extent of its prepetition secured claim.

15. As to the Class 3 secured claim of BMW Financial Services NA, LLC ("BMW"), secured by the 2011 ROLLS ROYCE Ghost Sedan (VIN: SCA664S54BUX4965) (the "Rolls Royce"), the Debtor shall surrender the Rolls Royce to BMW as of the Effective Date of the Plan. To the extent that the value of the Rolls Royce is less than the total amount of the Allowed Claim, the holder of such undersecured claim shall have an unsecured claim for such deficient amount, and may participate in any Class 5 distribution(s) related to such deficiency claim only if the holder of such claim amends its claim no later than 30 days after the Effective Date of the Plan to reflect the deficiency. Such additional treatment shall provide BMW with the indubitable equivalent to the extent of its prepetition secured claim.

16. As to the Class 4 claims of the EB5 Creditors named as Plaintiffs in the lawsuit filed in the U.S. District Court, Southern District of Florida (West Palm Beach), Case No. #: 9:16-cv-81871-KAM (See POC No. 19-1 through POC No. 81-1)(the "EB5 Lawsuit" or the "EB5 Claims")(collectively, the

9

"EB5 Creditors"), the holder(s) of such claims shall retain all rights in connection with both its EB5 Lawsuit and its pending Adversary Proceeding Related to Dischargeability (Adversary Case No. 18−01046−MAM)(the "EB5 Adversary"), and any and all other rights that may be available to the EB5 Creditors under applicable bankruptcy and non-bankruptcy law.  For purposes of voting and distribution under the Plan only, the Class 4 claims shall be deemed allowed in the amounts reflected in the respective filed claims, subject to i) the EB5 Claims not being amended from their original filing, in either amount or security/priority status,  ii) there not being any Allowed Claim from any other entity or claimant that is related to the allegations raised in the EB5 Lawsuit, including without limitation a claim by 160 Royal Palm LLC (but excepting the claims of the SEC and the Other Palm House Investors) and iii) the Debtor's Homestead exemption not becoming subject to or limited by any sustained objection, except only for a) that addressed in the Exemption Orders, as defined in Section VIII(A) of the Plan and b)  as addressed in Section II(B) of the Plan.   The amount and liability for these claims is already finally determined for the sole purposes of voting and distribution in this proceeding.  Any determination of nondischargeability and nondischargeable amounts to the EB5 Creditors, if any, shall ultimately be determined through non-appealable final orders in the EB5 Lawsuit only (filed as Case No. 9:18-cv-81038-XXXX  in the U.S. District Court in the Southern District of Florida), with the dischargeability (or nondischargeability) of such liability and damages, if any, to be determined through and in accordance with the EB5 Adversary only.  The Debtor reserves all rights in connection with the EB5 Lawsuit and the EB5 Adversary.

      17.    The holder(s) of the Allowed Claims of the EB5 Creditors shall receive their pro-rata share of both i) the non-exempt Net Sale Proceeds as set forth in Article VIII, Section A of the Plan and ii) the Debtor's Voluntary Exemption Share as set forth in Article VIII, Section A of the Plan.

      18.    Payments to the Allowed Claims of the EB5 Creditors will be provided no later than 10 business days after the entry of a final, non-appealable order approving the distributions related to the closing of the Sale of Debtor's Homestead, and incurring 0.00% annual interest until such time, in full satisfaction, settlement and release of their individual claims against the Debtor, subject only to the

outcome of the EB5 Lawsuit and the EB5 Adversary (which is based, in part, on the resolution of the EB5 Lawsuit).

19. Any distribution to the Debtor in connection with the exempt portion of any Net Sale Proceeds from the Sale of Debtor's Homestead shall be limited to $160,375, and the entire remaining balance of exempt Net Sale Proceeds shall be transferred to a trust account (the "Excess Homestead Equity Trust Account") pending a final non-appealable order determining i) any objection to claimed exemptions by the SEC and EB5 Claimants' pursuant to 11 U.S.C. §522(q)(1)(B) and ii) the Debtor's rights pursuant to 11 U.S.C. §522(q)(2)("Final 522(q) Order").  The Reorganized Debtor, SEC and EB5 Creditors shall be the only parties with rights to any funds in and distribution made from the Excess Homestead Equity Trust Account, with such rights ultimately determined through a Final 522(q) Order from the Bankruptcy Court.

20. The Class 5 claimants shall include the holders of a) Allowed Unsecured Claims, including without limitation the Allowed Unsecured Claims of the Other Palm House Investors, b) unsecured deficiency claims, as evidenced by the timely filing of an amended claim reflecting such unsecured deficiency amount, if any, and c) Claims, including without limitation pre-petition secured claims, if any, that arise from a judgment lien recorded in the Palm Beach County Official Records.  With respect to (c) above, any and all such judgment liens (including but not limited to judgments and/or liens against Robert V. Matthews, or a similar name, certified copies of which are recorded in Palm Beach County as follows: Merrill Lynch Commercial Finance Corp., now held by Bank of America, N.A. at O.R. Book 22799, Page 1434; ICE Air Conditioning, Inc. at O.R. Book 23338, Page 1589; Potomac Realty Capital, LLC at O.R. Book 23807, Page 12; American Express Bank, FSB at O.R. Book 23859, Page 484; American Express Centurion Bank at O.R. Book 24061, Page 1162; Shepley Wood Products and Shepley Wood Products Trust, assigned to Botticelli Advisors at O.R. Book 24994, Page 1099; RBS Citizens, N.A. at O.R. Book 26055, Page 1200) are hereby avoided in their entirety from the real property located at 101 Casa Bendita, Palm Beach Florida 33480 having legal description of 'Lot 6, Casa Bendita, according to the plat thereof as recorded in Plat Book 27, Page 22, Public Records of Palm Beach County, Florida and treated as Class 5 claims pursuant to Articles IV and V of the Confirmed Plan (the "Avoided

Lienholders"), with the sole exception of Class 1 DB Private and Investors Warranty of America, whose treatment is separately classified by agreement and pursuant to this order, as detailed below. Accordingly, the Claims of the Avoided Lienholders shall be treated in their entirety as Class 5 general unsecured claim to the extent that they have an Allowed Claim.

21. The Class 5 claimants shall receive (along with Class 4 claimants) their pro-rata share of 43.2% of Net Sale Proceeds (after payment of Allowed Secured Claims), as set forth in Article VIII, Section A of the Confirmed Plan.

22. The Investors Warranty judgment and corresponding judgment lien, found at Palm Beach County O.R. Book 24370, Page 688, is not avoided as to 43.2% of Net Sale Proceeds, and such 43.2% of Net Sale Proceeds shall remain subject to the entirety of the Investors Warranty judgment lien as a secured claim (the "Secured Portion of the Investors Warranty Claim"). The Secured Portion of the Investors Warranty Claim is hereby classified separately from all other classes of claims and specifically excluded from Class 5, the general unsecured class of claims. To the extent that Investors Warranty, whose judgment lien is avoided as to the remaining 56.8% of Net Sale Proceeds, has an unsecured deficiency claim as evidenced by the timely filing of an amended claim reflecting such unsecured deficiency amount, such unsecured deficiency claim shall be treated as a Class 5 claim.

23. Except as related to the claim of (a) the Securities and Exchange Commission (POC No. 86), which may be amended by the SEC no later than 30 days after the entry of a final non-appealable order on the SEC Complaint without authorization of the Court (the "SEC Claim"), or (b) DB Private, as related to post-petition advances for insurance and taxes, if any; and post-petition interest and reasonable attorney's fees and costs incurred (if DB Private is ultimately deemed over secured), or alternatively, if DB Private is ultimately deemed under secured; after the Confirmation Date, a Claim may not be amended without the authorization of the Court. Except as stated in this section, any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

24. The MVH Real Property, located at 0 Andrews Avenue (also referred to as 1 Risdon Street), Naugatuck, CT 06770 and having tax parcel IDs # 056-0900 and # 056-0800 with the Borough of Naugatuck (the "MVH Real Property") will be sold at a price that shall at least satisfy in full the lien on the MVH Real Property held by the Borough of Naugatuck, and shall be sold free and clear of all liens, claims, encumbrances, and other interests. Accordingly, the MVH Real Property shall be treated as property of the estate for purposes of this Plan and the Borough of Naugatuck (and any and all other creditors or interest holders of MVH) shall be subject to the automatic stay imposed pursuant to 11 U.S.C. §362 in connection with the MVH Real Property, which stay shall include, without limitation, a stay of the foreclosure of the MVH Real Property as brought by the Borough of Naugatuck Tax Collector in the Connecticut Superior Court (Court Location: Waterbury JD, Case No.: UWY-CV18-6038423-S).

25. Allowed Administrative Claims, including all post-confirmation fees of the Liquidating Agent which have not otherwise been satisfied pursuant to the Confirmed Plan shall be satisfied in full from the proceeds of the funds generated from the sale of the MVH Real Property. The net remaining proceeds from the sale of the MVH Real Property, if any, shall be deposited with the Liquidating Agent (or remain deposited with the closing agent, as determined by the Liquidating Agent and closing agent) and shall be distributed in accordance with this Plan and in the order of priorities outlined in the Bankruptcy Code, including as set forth in 11 U.S.C. §§ 507 and §§ 726.

26. Pursuant to 11 U.S.C. § 1141(a), except as provided in 11 U.S.C. § 1141(d)(2) and (d)(3), the provisions of the Confirmed Plan bind the Debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the Plan.

27. Except for any debt determined to be owed to the SEC or the EB5 Creditors that is determined to be nondischargeable as specifically addressed herein, pursuant to 11 U.S.C. § 1141(b) and

§1141(c), the property of the estate of the Reorganized Debtor, including without limitation the MVH Real Property and the Debtor's Homestead, shall revest in the Reorganized Debtor on the Effective Date, free and clear of all liens, Claims and interests of holders of Claims and Equity Interests,

28. Except for any debt determined to be owed to the SEC or the EB5 Creditors that is excepted from discharge as specifically addressed herein, the rights afforded in the Confirmed Plan and the treatment of all claims and interests therein shall be in exchange for and in complete satisfaction of all claims and interest of any nature whatsoever, known or unknown, including, except as expressly provided in the Confirmed Plan, interest accrued on or expenses incurred in connection with such claims or interests, from and after the order for relief, against the Debtor and the Reorganized debtor or its property or interests in property.

29. Pursuant to the terms of 11 U.S.C. §1141(d)(1) and Article IX of the Plan, which outlines potential exceptions to discharge as related to the EB5 Creditors, the SEC and the IRS, the Confirmed Plan discharges the Debtor from any debt that arose before the date of confirmation, subject to the specific provisions of 11 U.S.C. § 1141(d), as applicable.  Moreover, any potential limitation to discharge imposed under 11 U.S.C. §1141(d)(5)(C), shall be limited to the Class 4 EB5 claimants and the SEC only (individually and collectively, the "Contingent Discharge Creditors"), as determined by a Final 522(q) Order.

30. The Court shall retain jurisdiction as set forth in Article XI of the Plan, including without limitation, retaining jurisdiction in connection with a) the Sale of the Debtor's Homestead Property, including without limitation the employment of an auction broker for the sale of such real property; b) the Sale of the MVH Property; and c) the Adversary Proceeding brought by the Class 4 EB5 claimants related to dischargeability (Adversary Case No. 18−01046−MAM)(the EB5 Adversary")  However, nothing herein shall deprive the relevant court, including without limitation the district court, of its rightful jurisdiction in connection with the final adjudication of the pending complaints filed by the Securities and Exchange Commission (related to POC No. 86) and the EB5 Creditors (related to POC Nos. 18 to 81)  or

in connection with determining the nondischargability of any debt owed by the Debtor to the Securities and Exchange Commission, as permitted under applicable law.

31.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax in any jurisdiction as all such transfers are deemed to be material components of and specifically contemplated within the Plan. *See Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, No. 07-312, 544 U.S. 33, 128 S. Ct. 2336, 171 L. Ed. 2d 203, 2008 U.S. LEXIS 5025 (2008).  Any such transfer occurring before, on or after the Effective Date shall be deemed to be in furtherance of the Confirmed Plan. This Court specifically orders that any sale of the MVH Real Property or the Debtor's Homestead property as contemplated and agreed to in the Confirmed Plan, and other ancillary transactional documents giving rise to liens for which fees or taxes may otherwise be assessed, fall within the application of section 1146(a).

32.     The Debtor shall serve a conformed copy of this Order upon the Office of the United States Trustee, all creditors, equity holders and counsel of record, and other parties in interest.

33.     Debtor shall continue to pay all applicable fees to the Office of the United States Trustee, until the closing, dismissal or conversion of this case.

34.     The Court will conduct a post-confirmation status conference on April 16, 2019 at 1:30 p.m., U.S. Bankruptcy Court, 1515 North Flagler Drive, 8th Floor, Courtroom: A, West Palm Beach, FL 33401.

###

Submitted by:
Christian Panagakos, Esquire
Florida Bankruptcy Advisors, P.L.
120 E. Oakland Park Blvd., Suite 207
Oakland Park, FL 33334
Tel: 954-600-8990
Fax: 954-692-9070
cp@floridabankruptcyadvisors.com

15

Christian Panagakos, Esq. is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.