

**ORDERED in the Southern District of Florida on February 25, 2019.**

_Mindy A. Mora_
**Mindy A. Mora, Judge
United States Bankruptcy Court**

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| IN RE: | Case No.: 17-23426-MAM |
| ROBERT MATTHEWS, | Chapter 11 |
| Reorganized Debtor. | |
| _____/ | |

**ORDER GRANTING DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER (I) APPROVING BID PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF DEBTOR'S HOMESTEAD, (II) APPROVING THE FORM AND MANNER OF NOTICE OF SALE, (III) SCHEDULING AN AUCTION AND SALE HEARING AND (IV) APPROVING THE SALE OF THE DEBTOR'S HOMESTEAD FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

THIS CAUSE came to be heard on February 5, 2019 on Debtor's Motion For The Entry Of An Order (I) Approving Bid Procedures And Bid Protections In Connection With The Sale Of Debtor's Homestead, (II) Approving The Form And Manner Of Notice Of Sale, (III) Scheduling An Auction And Sale Hearing And (IV) Approving The Sale Of The Debtor's Homestead Free And Clear Of Liens, Claims And Encumbrances [D.E.403](the "Motion to Approve").  The Court having reviewed the Motion to Approve and having heard argument of counsels and being duly advised in the premises, it is hereby:

ORDERED as follows:

1. The Motion is GRANTED.

2. The real property located at 101 Casa Bendita, Palm Beach, Florida 33480, having a legal description of: Lot 6, Casa Bendita, according to the plat thereof as recorded in Plat Book 27, Page 22, Public Records of Palm Beach County, Florida (the "Property") shall be sold through an auction sale to take place on Thursday, March 28, 2019 at 11 AM EST, onsite at the Property (the "Auction"), subject to the terms of this Order and approval of the Court at a Sale Hearing.

3. A Sale Hearing is scheduled to be held on April 1, 2019 at 10AM EST at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401 for purposes of approving the sale and/or conveyance of the Property to the highest or best bids that have been accepted through the Auction, or alternatively to DB Private Wealth Mortgage Ltd. or its assigns (collectively "DB Private"), free and clear of all liens, claims, interests and encumbrances, pursuant to this Order (the "Sale Hearing"). At the Sale Hearing, the Court will also consider the Reorganized Debtor's request to waive the 14 day stay period pursuant to Fed. R. Bankr. P. 6004(h).

## The Auction

4. To participate in the Auction bidding process, an interested bidder must:

   a. wire into the trust account of employed closing agent Rice Pugatch Robinson Storfer & Cohen, PLLC (the "Closing Agent"), an escrow deposit of ONE MILLION DOLLARS ($1,000,000) no later than 5:00 PM EST on Tuesday, March 26, 2019 (the "Bid Deadline");

   b. submit to the Lamar Fisher and Fisher Auction Company, Inc. (the "Auctioneer" or the "Broker"), Florida Bankruptcy Advisors, P.L. (the "Liquidating Agent") and Closing Agent on or before the Bid Deadline: a fully executed asset purchase agreement in strict adherence with the final Asset Purchase Agreement filed in the instant case [D.E. 417] (the effectiveness of such APA being contingent only upon the Qualified Bidder becoming the Successful Bidder or the Immediate Back-Up Bidder, as defined herein, pursuant to these procedures subject only to Bankruptcy Court approval, with no due diligence or financing contingencies), with a purchase price, not including any Buyer's Premium, of not less than the

        Minimum Bid Amount of Thirty-One Million and No/100 ($31,000,000)(the "Minimum Bid"),

    c. together with such financial disclosures and documentation which demonstrate, in the Liquidating Agent's sole business judgment, the potential bidder's financial and other capabilities to consummate the sale in an amount no less than the Minimum Bid.

    (Collectively, the "Participation Requirements")

5. A person who timely complies with the Participation Requirements shall have submitted a "Qualified Bid" and shall be deemed a "Qualified Bidder". The list of Qualified Bidders will not be shared with anyone prior to the Auction, except as stated herein.

6. DB Private shall be deemed a Qualified Bidder, and has preserved credit bid rights up to the amount of its allowed secured claim and pursuant to this Order.

7. The minimum opening auction price for the property shall be in the amount of the Highest Qualified Bid, as made by the highest Qualified Bidder, and shall remain subject to higher or otherwise better offers at the Auction.

8. A closing of the sale of the Property shall occur on or before fifteen (15) calendar days after the Order Approving the Sale is entered (the "Sale Order") and becomes final and non-appealable (the "Closing Date").

9. In the event that neither the Liquidating Agent or Broker receive a timely Qualified Bid, the Liquidating Agent will seek final approval of the sale to DB Private at the Sale Hearing and pursuant to the terms and conditions of this Order.

10. <u>Auction Procedures and Terms</u>: At the Auction, the Reorganized Debtor will identify the Qualified Bid which it deems to be the highest and best offer received and which shall serve as the opening bid. Once the opening bid has been determined:

    a. All Qualified Bidders shall be entitled to make subsequent bids in initial increments of not less than $500,000 at Liquidating Agent's sole and final discretion, in consultation with Auctioneer, to decrease such bid increment amount (each a "Subsequent Bid"). Bidding at the Auction shall continue until such time as the highest or best offer is determined by the Liquidating Agent in the exercise of its sole business judgment. The Liquidating Agent, in consultation with the Auctioneer reserves the right to modify the bidding increments or

    announce at the Auction additional procedural rules consistent with this Motion for conducting the Auction in its sole business judgment.

b. In the event that DB Private makes a Subsequent Bid or otherwise outbids a Qualifying Bidder, and DB Private is the successful bidder, DB Private shall pay, at and as a condition of closing, funds to the estate in the amount necessary to cover such purchase price, the full amount of the Buyer's Premium, , and any such other amounts, all of which would be paid by a non-DB Private Qualified Bidder, , less and except any amounts which would be distributed to DB Private on account of its allowed secured claim.

c. All Qualified Bids, with the sole exception of DB Private except as stated herein, shall be subject to a 5.0% buyer's premium, calculated by multiplying the gross purchase price for the Property as identified in the APA, or bid in the form of a Subsequent Bid, by five percent (.05 or 5.0%). To be clear, under no circumstance shall the Buyer's Premium constitute proceeds of the sale or be subject to the interests of any lienholders. Rather, the Buyer's Premium shall be used to first compensate the following pursuant to the Confirmed Plan and outlined herein: i) the Broker, which compensation shall be inclusive of approved marketing expenses incurred in connection with the sale of the Property, ii) the buying broker, if any, iii) Customary Closing Costs, including without limitation all charges owing to the Closing Agent in connection with the listing, auction and sale of the Property ("Customary Closing Costs"), iv) the entirety of unpaid administrative fees of Christian Panagakos and Florida Bankruptcy Advisors. P.L., including without limitation post-confirmation fees as both counsel and Liquidating Agent and v) any and all other Allowed Administrative Claims, including without limitation the Allowed Claim of Accountant Kevin Munroe [D.E. 390] and any fees and charges assessed against the estate under chapter 123 of title 28, with any and all funds remaining from the Buyer's Premium, if any, to be distributed in the order of priorities as set forth in 11 U.S.C. §§ 507 and 726, subject only to 11 U.S.C. §522.

d. In the event that there are no Qualified Bids and DB Private takes title to the Property, DB Private shall pay a credit bid buyer's premium in an amount not to

exceed $145,000 to be paid within ten days of the order approving the transfer to DB Private becoming final and non-appealable and the deed to DB Private being recorded (the "Credit Bidder's Premium"). The Credit Bidder's Premium shall be used to reimburse up to $30,000 towards the Broker's approved marketing campaign expenses, up to $15,000 towards the attorney's fees and expenses of the Closing Agent, and up to $100,000 towards the unpaid administrative fees of Christian Panagakos and Florida Bankruptcy Advisors. P.L., including without limitation post-confirmation fees as both counsel and Liquidating Agent.

e. Each Qualified Bidder's offer shall be irrevocable until the selection of the Successful Bidder and, if applicable, the Immediate Back-Up Bidder (as set forth in subsections (h) and (i) below), provided that if such bidder is selected as the Successful Bidder or the Immediate Back-Up Bidder, its offer shall remain irrevocable until the time of closing of the sale to the Successful Bidder or the Immediate Back-Up Bidder.

f. Broker's Commissions: All broker commissions shall be in accordance with the Orders employing Broker and as outlined herein. The brokers commission structure, to be paid in its entirety from the Buyer's Premium as outlined herein, is 2.0% of the gross sale price, not including any Buyer's Premium, to the buying broker, if any and ii) payment to the listing Broker as follows:

   i. $250K fixed fee for a gross sale price up to and including $33M, not including the Buyer's Premium;
   ii. 1.0% of the gross sale price if over $33M and up to and including $36.5M, not including the Buyer's Premium;
   iii. 1.5% of the gross sale price if over $36.5M and up to and including $40M, not including the Buyer's Premium;
   iv. 2.0% of the gross sale price if over $40M, not including the Buyer's Premium;
   v. If there is not a buyer's broker involved in the sale of the Property, Broker will evenly split the expected 2% buyer broker commission with the bankruptcy estate, thereby increasing such funds to be distributed as a Buyer's Premium as detailed herein.

      vi.      Moreover, in the event that no Qualifying Bid is received, and DB Private Wealth Mortgage Ltd. Or its assigns ("DB Private") takes title to the Property by credit bid, then no broker will be entitled to any earned commissions, however, DB Private shall reimburse the actual and approved advanced marketing campaign expenses, up to $30,000 within ten (10) days of the order approving sale becoming final and non-appealable and the deed to DB Private being recorded, as further defined and outlined in the Motion to Approve Bid Procedures".

      vii.      To be clear, Broker shall be paid solely from the fees paid by the buyer that submits the highest and best Qualified Bid at the Auction, and Broker shall not be entitled to any fees or reimbursement of costs whatsoever from the bankruptcy estate or any interested parties to the bankruptcy estate, with the exception of reimbursement of $30,000 from DB Private in the event that DB Private takes title to the Property by credit bid as provided herein.

For the avoidance of doubt, the above percentages are not cumulative of each other (with the sole exception of the buyer broker commission, as explained herein). Any amounts remaining from the Buyer's Premium after application of the above percentages shall be paid by broker to the Closing Agent and shall be applied and distributed in strict accordance with paragraph 10(c) herein. Moreover, other than as set forth herein, the Reorganized Debtor's bankruptcy estate shall not be liable for any commissions to any broker.

g. Closing and Title Agent: Closing Agent, Rice Pugatch Robinson Storfer & Cohen, PLLC, has been selected and has been employed by court approved application to serve as Closing Agent and Title Agent with respect to the Sale of the Property. Except as otherwise set forth in this order with respect to a sale to DB Private, Closing Agent is entitled to and shall be compensated from the title premium to be paid by Buyer at closing in addition to such other compensation, if any, authorized by the order retaining Closing Agent as special counsel upon application to the Court.

h. Successful Bid: After the conclusion of the Auction, the two highest and best bids as determined in the sole and absolute discretion of the Liquidating Agent shall be the Successful Bidder and Immediate Back-Up Bidder respectively. The Reorganized Debtor shall submit the two highest or best bids that have been accepted (the "Successful Bid") for approval by the Bankruptcy Court at the Sale Hearing.  The Qualified Bidder who has the Successful Bid presented for approval to the Court shall be referred to as the "Successful Bidder." Within 2 business days following Court approval, the Successful Bidder and Immediate Back-Up Bidder (as set forth in below, shall deposit an additional sum, such that the sum of the $1,000,0000 escrow deposit and the Additional Deposit together shall equal 10% of the Successful Bid (as set forth in the APA).  The Deposit will be wired to the Closing Agent to be held in the Closing Agent's Escrow Account. In the event either the Successful Bidder or Immediate Back-Up Bidder fail to wire the Additional Deposit to the Debtor's Escrow Agent within the 2 business day period, the bid shall be automatically disqualified and shall forfeit the entirety of its escrow Deposit, with such forfeited Deposit to be applied and distributed as a Buyer's Premium, as outlined herein; the Broker shall then notify the next highest and best bidder to replace the disqualified Successful Bidder or Immediate Back-Up Bidder, as applicable.

i. Closing Date and Immediate Back-Up Bid. The closing of the transaction (the "Closing") shall take place on or before fifteen (15) calendar days after the order approving the sale is entered (the "Sale Order") and becomes final and non-appealable (the "Closing Date"), subject to the terms of the APA. The Successful Bidder must be prepared and must in fact consummate the purchase of the Property in accordance with the APA. All cash proceeds shall be paid in U.S. funds and shall be by wire transfer to be held in trust by Closing Agent. Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Property because of a breach or failure on the part of the Successful Bidder, then such Successful Bidder shall automatically forfeit the entirety of its escrow Deposit, with such forfeited Deposit to be applied and distributed as a Buyer's Premium, as outlined herein, and the Closing Agent shall close the sale of the

    Property with the next highest or otherwise best Qualified Bidder to be the Successful Bidder (the "Immediate Back-Up Bidder"). The escrow Deposit of the Immediate Back-Up Bidder shall be subject to the same treatment as that of the Successful Bidder, as outlined herein, upon the failure of the Immediate Back-Up Bidder to consummate the closing of the purchase of the Property because of a breach or failure on the part of the Immediate Back-Up Bidder.  At the Sale Hearing, the Liquidating Agent shall also seek approval from the Court for the next highest or best bid (the "Immediate Back-Up Bid"), which approval shall authorize the Reorganized Debtor to consummate the Immediate Back-Up Bid immediately after a default under the Successful Bid without further order of the Court.

j. Promptly following the conclusion of the Sale Hearing, the Closing Agent shall return the deposits to each unsuccessful Qualified Bidder (except the Immediate Back-Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder within two (2) business days, or applied to the purchase price in a Closing with such Immediate Back-Up Bidder, or as otherwise outlined herein.

k. As is/where is: The Property will be sold in its "as is", "where is" condition and with all faults, with no guarantees or warranties, express or implied.

l. Credit Bidding: Only holders of Allowed Secured Claims (that are otherwise Qualified Bidders) are permitted to credit bid at the Auction; provided that, in the event any person submits a permitted credit bid and is the Successful Bidder and/or Immediate Back-Up Bidder, such person shall provide for any commission due to the Broker, in cash on the Closing Date, except as otherwise stated herein. No party shall be permitted or entitled to credit bid, or attempt to credit bid, any alleged obligation of the Reorganized Debtor that the Reorganized Debtor asserts constitutes, or will constitute at some point, a contingent, unliquidated or disputed claim against the Reorganized Debtor. The Reorganized Debtor reserves all rights to contest the propriety of any credit bid pursuant to § 363(k) and § 105 of the Bankruptcy Code.

11. Transfer to DB Private.   In the event that no Qualifying Bid is received, then title to the Property shall be transferred to DB Private and/or its assigns by Court Order at the April 1, 2019 hearing free and clear of any liens, claims or encumbrances, without any payment from DB Private (except as set forth in paragraph 10(b)) or disbursement to the Reorganized Debtor's estate (except as set forth in paragraph 10(d))(a "Transfer to DB Private").  In the event that there are no Qualified Bids and DB Private or its assigns take title to the Property, no broker will be entitled to any earned commissions, however DB Private shall pay a Credit Bidder's Premium in an amount not to exceed $145,000 to be paid within ten days of the order approving sale becoming final and non-appealable and the deed to DB Private being recorded, as outlined in paragraph 10(d) herein.   All of such payments made by DB Private, shall be paid by DB Private from the value DB Private receives from the transfer of the Property only, and shall not constitute a distribution, proceeds of the sale or be subject to the interests of any lienholders.

12. <u>Waiver of Conflicts</u>: Any person who has submitted a Qualified Bid shall be deemed to have waived any right to claim there is a conflict with respect to an unrelated transaction for which such person has employed the law firm of Florida Bankruptcy Advisors, P.L. or Closing Agent, and the Reorganized Debtor's employment of Craig Pugatch and the law firm of Rice Pugatch Robinson Storfer & Cohen, PLLC as real estate transaction counsel and title agent for the sale of the Property and related transactions contemplated herein.

## The Sale Hearing

13. A Sale Hearing is scheduled to be held on April 1, 2019 at 10AM EST at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401 for purposes of approving the sale and/or conveyance of the Property to the highest or best bids that have been accepted through the Auction, or alternatively to DB Private, free and clear of all liens, claims, interests and encumbrances, pursuant to this Order (the "Sale Hearing").

14. Pursuant to Bankruptcy Rule 2002(a), the Liquidating Agent shall provide creditors with 21 days' notice of the Sale Hearing through service of this Order upon all interested parties. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Sale Hearing.

15. Further, the Liquidating Agent will publish notice of the proposed sale free and clear of all Liens pursuant to Section 363(f) of the Bankruptcy Code, with such Liens attaching to the sale proceeds in the Palm Beach Post not less than once per week for two consecutive weeks. Such publication notice will set forth the time, date and place of the Auction and Sale Hearing.

16. Pursuant to Sections 363(f) and 1123 of the Bankruptcy Code and as outlined herein, the Property shall be sold and conveyed free and clear of all liens, claims, interests and encumbrances, including but not limited to, the interests held by the following parties who shall be served with notice of the sale and this order:

   a. Robert V. Matthews by reason of his fee absolute ownership of the Property as evidenced in that Quit Claim Deed from 101 Casa Bendita LLC, a Florida limited liability company to Robert V. Matthews, recorded December 27, 2006, in O.R. Book [21235, Page 1574](), Public Records of Palm Beach County, Florida.

   b. Maria Matthews, by reason of her marriage to Robert V. Matthews and that Continuous Marriage Affidavit recorded in O.R. Book [22921, Page 1879](), Public Records of Palm Beach County, Florida.

   c. Edward A. Marod, Esq., attorney for Lan Li, et al, and all interested parties, as more particularly set forth in the Notice of Appearance and Request for Service in United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division Case No. 18-19441, Docket Entry 31.; and as identified in action pending in U.S. District Court Case No. 16-81871; and by reason of and as related to Proof of Claim Nos. 19 through and including 81.

   d. Other EB5 Creditors, by reason of and as related to Proof of Claim Nos. 89 through and including 101.

   e. Securities and Exchange Commission by reason of United States District Court, Southern District of Florida, West Palm Beach Division Case No. 18-81038; and as related to Proof of Claim No. 86.

   f. Ryan Black, by reason of Palm Beach County Circuit Court Case No. 15-14228 and US Southern District Court Case No. 9:15-CV-81606-KAM.

   g. Patricia Cox and Michael Cox, by reason of Palm Beach County Circuit Court Case No. 2017-CA-005634.

h. Palm House LLC, by reason of Palm Beach County Circuit Court Case No. 15-14228;

i. Joseph J. Walsh, Sr., by reason of any interest in Palm House Hotel LLLP and any alleged interest in the Property;

j. Connect Auto, Inc. by reason of Palm Beach County Circuit Court Case No. 16-003374;

k. Ryan Cowell, as assignee of HBA International, and by reason of US Southern District Court Case No. 9:15-CV-81606-KAM.

l. Gerry Matthews, by reason of Palm Beach County Circuit Court Case No, 14-12824, and by reason of Palm Beach County Circuit Court Case No. 15-14228;

m. 160 Royal Palm LLC by reason of and as related to Proof of Claim No. 102;

n. Daniel Gorman, as to any interest disclosed by Memorandum of Understanding Agreement recorded in Official Records Book 27522 Page 958.

o. DB Private Wealth Mortgage Ltd., by reason of a) that assignment recorded August 6, 2009, in O.R. Book 23378, Page 532; and Renewed, Amended, Consolidated and Restated Mortgage recorded in O.R. Book 22683, Page 793, Public Records of Palm Beach County, Florida and b) that assignment recorded August 6, 2009, in O.R. Book 23378, Page 532, Public Records of Palm Beach County, Florida and c) Case No. 2015CA006294 filed in the Circuit Court of Palm Beach County, Florida, resulting in a Final Judgment recorded on December 13, 2016, in O.R. Book 28764, Page 342, Public Records of Palm Beach County, Florida.

p. The Internal Revenue Service, by reason of those Federal Tax Liens against R. V. Matthews, or similar name, recorded at O.R. Book 23141, Page 179; O.R. Book 23141, Page 180; O.R. Book 28603, Page 678; O.R. Book 29759, Page 289; O.R. Book 29759, Page 290, Public Records of Palm Beach County, Florida; and as related to Proof of Claim No. 13.

q. Investors Warranty judgment and corresponding judgment lien, found at Palm Beach County O.R. Book 24370, Page 688; and as related to Proof of Claim No. 17.

r. Wells Fargo, N.A., recorded at O.R. Book 23376, Page 771, Public Records of Palm Beach County, Florida.

s. Merrill Lynch Commercial Finance Corp., now held by Bank of America, N.A., by reason of that Final Judgment recorded at O.R. Book 22799, Page 1434, Public Records of Palm Beach County, Florida, and as related to Proof of Claim No. 15.

t. ICE Air Conditioning, Inc. by reason of that Final Judgment recorded at O.R. Book 23338, Page 1589, Public Records of Palm Beach County, Florida.

u. Potomac Realty Capital, LLC by reason of that Final Judgment recorded at O.R. Book 23807, Page 12, Public Records of Palm Beach County, Florida.

v. American Express Bank, FSB by reason of that Final Judgment recorded at O.R. Book 23859, Page 484, Public Records of Palm Beach County, Florida, and as related to Proof of Claim No. 5.

w. American Express Centurion Bank by reason of that Final Judgment recorded at O.R. Book 24061, Page 1162, Public Records of Palm Beach County, Florida, and as related to Proof of Claim No. 6.

x. Shepley Wood Products and Shepley Wood Products Trust (believed to be assigned to Botticelli Advisors) by reason of that Final Judgment at O.R. Book 24994, Page 1099; RBS Citizens, N.A. at O.R. Book 26055, Page 1200, Public Records of Palm Beach County, Florida.

y. Seth Bernstein/SAB LLC, by reason of and as related to Proof of Claim No. 83, including without limitation that Credit Enhancement Agreement entered into between Seth Bernstein and the Reorganized Debtor and attached to said Proof of Claim.

z. JPMorgan Chase Bank, National Association ("JPMorgan"), by reason of and as related to Proof of Claim No. 16.

aa. Glenn Straub and any and all affiliates of Glenn Straub, including without limitation KK-PB Investments LLC, West Coast Investors, LLC and Palm Beach Polo, Inc. by reason of and as related to Case No. 562018CA001224AXXXHC, Circuit Court of the 19th Judicial Circuit, Palm Beach, Florida, the property

located at 160 Royal Palm and claims associated with 160 Royal Palm LLC and its affiliates.

17. Pursuant to the terms of the Confirmed Plan and this Order, the following parties are the only parties that have post-confirmation claims and liens secured by the Property, and whose allowed secured claims shall be paid at closing from the proceeds of sale or whose liens shall attach to the proceeds of sale of the Property in the order of their priority with the validity, force and effect that they have pursuant to the Confirmed Plan subject to the rights, claims, defenses and objections of the Reorganized Debtor and all interested parties with respect to such liens:

   a. DB Private Wealth Mortgage Ltd., by reason of a) that assignment recorded August 6, 2009, in O.R. Book 23378, Page 532;  and Renewed, Amended, Consolidated and Restated Mortgage recorded in O.R. Book 22683, Page 793, Public Records of Palm Beach County, Florida and b) that assignment recorded August 6, 2009, in O.R. Book 23378, Page 532, Public Records of Palm Beach County, Florida and c) Case No. 2015CA006294 filed in the Circuit Court of Palm Beach County, Florida, resulting in a Final Judgment recorded on December 13, 2016, in O.R. Book 28764, Page 342, Public Records of Palm Beach County, Florida.

   b. The Internal Revenue Service, by reason of those Federal Tax Liens against R. V. Matthews, or similar name, recorded at O.R. Book 23141, Page 179; O.R. Book 23141, Page 180; O.R. Book 28603, Page 678; O.R. Book 29759, Page 289; O.R. Book 29759, Page 290, Public Records of Palm Beach County, Florida; and as related to Proof of Claim No. 13.

   c. Investors Warranty judgment and corresponding judgment lien, found at Palm Beach County O.R. Book 24370, Page 688; and as related to Proof of Claim No. 17.

18. The Property will be sold free and clear of the following previously recorded interest and lien held by Wells Fargo, N.A., recorded at O.R. Book 23376, Page 771, Public Records of Palm Beach County, Florida which shall be avoided in its entirety pursuant to that Mutual Release Agreement between Wells Fargo Bank, N.A., a national banking association successor-in-interest to Wells Fargo Business Credit, Inc. and the Reorganized Debtor, et al., dated July 12, 2011, attached hereto as Exhibit 2.

19. Pursuant to the Confirmed Plan and this Order, the Property will be sold free and clear of the following previously recorded interests and liens which have been avoided in their entirety by the Confirmed Plan and do not constitute secured claims or liens on the Property or the proceeds of sale of the Property to any extent:

   a. Merrill Lynch Commercial Finance Corp., now held by Bank of America, N.A., by reason of that Final Judgment recorded at O.R. Book [22799, Page 1434](), Public Records of Palm Beach County, Florida, and as related to Proof of Claim No. 15.

   b. ICE Air Conditioning, Inc. by reason of that Final Judgment recorded at O.R. Book [23338, Page 1589](), Public Records of Palm Beach County, Florida.

   c. Potomac Realty Capital, LLC by reason of that Final Judgment recorded at O.R. Book [23807, Page 12](), Public Records of Palm Beach County, Florida.

   d. American Express Bank, FSB by reason of that Final Judgment recorded at O.R. Book [23859, Page 484](), Public Records of Palm Beach County, Florida, and as related to Proof of Claim No. 5..

   e. American Express Centurion Bank by reason of that Final Judgment recorded at O.R. Book [24061, Page 1162](), Public Records of Palm Beach County, Florida, and as related to Proof of Claim No. 6..

   f. Shepley Wood Products and Shepley Wood Products Trust (believed to be assigned to Botticelli Advisors) by reason of that Final Judgment at O.R. Book [24994, Page 1099](); RBS Citizens, N.A. at O.R. Book [26055, Page 1200](), Public Records of Palm Beach County, Florida.

   g. Seth Bernstein/SAB LLC, by reason of and as related to Proof of Claim No. 83, including without limitation that Credit Enhancement Agreement entered into between Seth Bernstein and the Reorganized Debtor and attached to said Proof of Claim.

   h. Glenn Straub and any and all affiliates of Glenn Straub, including without limitation KK-PB Investments LLC, West Coast Investors, LLC and Palm Beach Polo, Inc. by reason of and as related to Case No. 562018CA001224AXXXHC, Circuit Court of the 19th Judicial Circuit, Palm Beach, Florida, the property

located at 160 Royal Palm and claims associated with 160 Royal Palm LLC and its affiliates.

20. In all events, pursuant to 11 U.S.C. §363 and §1123, the purchaser of the Property shall take the Property free of all liens, claims or encumbrances and any prior claimant or interest holder with respect to the Property may look only to the proceeds of sale.

21. Section 1123 permits the sale of property free and clear of all liens, claims and encumbrances pursuant to the terms of the Confirmed Plan. Furthermore, section 363(f) of the Bankruptcy Code authorizes the Reorganized Debtor to sell property of the estate free and clear of any liens, claims or encumbrances if one of the following is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any of the aforementioned conditions is met. *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988).

22. Collectively, the procedures mandated herein evidence that the Reorganized Debtor's proposed sale of the Property to the highest and best bidder at auction is in the best interest of all creditors of the estate. With notice of the sale and the Sale Procedures to all creditors and interested parties and the Broker having extensively marketed the Property it is expected that the sale will be for a fair and reasonable market price and conducted in good faith. Moreover, if the Court finds that DB Private (or the Successful Bidder or Immediate Back-Up Bidder) will have acted in good faith, the Sale Order is expected to provide appropriate findings and protections pursuant to Section 363(m) of the Bankruptcy Code.

###

Submitted by:

Christian Panagakos, Esquire
Florida Bankruptcy Advisors, P.L.
120 E. Oakland Park Blvd., Suite 207
Oakland Park, FL 33334
Tel: 954-600-8990
Fax: 954-692-9070

cp@floridabankruptcyadvisors.com

Christian Panagakos, Esq. is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.